**STATE ex rel. L.Y., Relator,**

v.

**The Honorable Lawrence O. DAVIS, Jr., Judge of the Circuit Court of Franklin County, Missouri Division II, Respondent.**

No. 51962.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 23, 1986.

Thomas C. DeVoto, St. Louis, for relator.

Sidney A. Thayer, Jr., Washington, for respondent.

SATZ, Presiding Judge.

This is an action in prohibition. The respondent circuit judge has ordered relator, L.Y., a defendant in the action below, to produce information relator gave to the Missouri Bar Plan, relator's professional liability carrier. Relator seeks our writ to prohibit respondent from enforcing his order. We have issued our preliminary writ and now make it permanent.

In the underlying action, the plaintiff is suing relator for negligence based on relator's alleged failure to defend an action and allowing a default judgment to be entered against the plaintiff. In the course of discovery, the plaintiff requested relator to produce all documents, letters, correspondence, memos and other writings between relator and the Missouri Bar Plan concerning the facts and circumstances of the plaintiff's claim against relator. Relator objected to the request, contending the requested papers are protected by the attorney-client privilege and the work product doctrine. Respondent overruled the objection and ordered relator to comply with the request. Relator then filed his application for the writ.

■ Relator properly uses the writ to test whether respondent abused his discretion in granting discovery. *State ex rel. Anheuser v. Nolan*, 692 S.W.2d 325, 327 (Mo.App.1985). Relator, as the moving party, has the burden of showing respondent abused his discretion. *State ex rel. Syntex Agri-Business, Inc. v. Adolf*, 700 S.W.2d 886, 887 (Mo.App.1985). We find relator has carried his burden.

Relator's arguments here are the same as his arguments below: the information requested is protected by the attorney-client privilege and the work-product doctrine. The attorney-client privilege here, we believe, is defined by the holding and

teaching of *State ex rel. Cain v. Barker*, 540 S.W.2d 50 (Mo. banc 1976).

In the underlying action in *Cain,* the plaintiff sought to discover statements made by the defendant to the adjuster for his insurance carrier. From the facts, it was not clear whether these statements were taken at the request of defendant's attorney or were given before defendant had hired an attorney. Our Supreme Court stated it was unnecessary to determine whether an attorney-client relationship existed before the statements were made because an insured-insurer relationship existed and this relationship receives the same protection as the attorney-client relationship. *Id.* at 53. The reason for this congruent protection is two-fold. The insured delegates the selection of an attorney and the defense of any litigation to his liability insurer. Thus, the insured may properly assume the communication is made to the insurer for the purpose of transmitting it to an attorney for the protection of the insured's interest. *Id.* at 54. In addition, public policy encourages the insured to make a full report to his insurer without fear of discovery by an adverse party. *Id.* at 56. This reasoning has been consistently followed by later Missouri cases and is accepted in other jurisdictions. *See,* e.g. *May Dept. Stores Co. v. Ryan*, 699 S.W.2d 134, 136 (Mo.App.1985); *Truck Ins. Exchange v. Hunt*, 590 S.W.2d 425, 432, (Mo. App.1979); *Martin v. Clark*, 92 Ill.App.3d 518, 47 Ill.Dec. 305, 307, 415 N.E.2d 30, 32 (1980); *Thomas v. Harrison*, 634 P.2d 328, 334 (Wyo.1981). For example, in *May Dept. Stores, Co., supra*, the court stated: "*Cain* surrounds the insured-insurer relationship with the same cloak of privileged confidentiality that protects the communications between attorney and client from discovery." *Id.* at 136.

Respondent attempts to distinguish the facts of the present case from *Cain* and the other noted cases. Sometime after receiving the information in question here from relator, the Missouri Bar Plan denied coverage on the potential claim. Because coverage was denied, respondent contends there was no insured-insurer relationship between relator and the Missouri Bar Plan. Therefore, respondent reasons, the rule in *Cain* does not apply. Moreover, respondent argues, *Cain* requires there must be coverage for the claim in question in order for the communications between an insured and insurer to be privileged. We disagree.

First, an insured-insurer relationship did exist between relator and the Missouri Bar Plan by virtue of their contractual relationship. As pointed out in *May Dept. Stores Co., supra,* the rule in *Cain* gives the insured-insurer relationship the same protection as the attorney-client relationship. *May Dept. Stores Co., supra*, 699 S.W.2d at 136. Therefore, once the insured-insurer relationship is created, the relationship receives the same protection an attorney-client relationship receives for communications. Second, respondent's view of *Cain* would abrogate the principle *Cain* established. If communications between insured and insurer are to be privileged only if the insurer ultimately admits coverage, there is no incentive for the insured to make full disclosure to his insurer. In fact, it may be impossible and, at best, difficult for the insurer to determine whether coverage exists without the insured making a full explanation of the circumstances surrounding the claim.

To read *Cain* as respondent does presupposes *Cain* created a Catch–22 situation. That reading serves no useful purpose. Thus, we do not read *Cain* to require claims actually be covered before any communications between insured and insurer are privileged.

Having found the information here is protected by the attorney-client privilege, we need not address the effect the work product doctrine would have on the issues before us.

Preliminary writ made permanent.