CLARENCE EXLINE, Plaintiff-Appellee, v. JOSEPH E. EXLINE, Defendant-Appellant.

Second District   No. 2—95—0455

Opinion filed October 25, 1995.

Stephen A. Rehfeldt, Louis A. Varchetto, and William J. Hoffman, all of Wylie, Mulherin, Rehfeldt & Varchetto, P.C., of Wheaton, for appellant.

No brief filed for appellee.

PRESIDING JUSTICE McLAREN delivered the opinion of the court:

This case comes to us on interlocutory appeal from the trial court's decision to grant the plaintiff's motion to compel discovery and the trial court's denial of the defendant's motion to reconsider. The trial court certified for review the question of whether a nonparty insured's statement given to her insurer is a privileged communication protected from discovery by the attorney-client privilege. We granted leave to appeal. For the reasons stated below, we reverse and remand for further proceedings.

On January 16, 1994, the defendant, Joseph Exline, and his two minor children, McKenzie, age two, and Jeffrey, age four, stayed overnight at the plaintiff's home. The plaintiff, Clarence Exline, is the defendant's father. Early the next morning, the defendant left for work, leaving McKenzie and Jeffrey at home with the plaintiff. According to the plaintiff, the defendant left a lighter in the room occupied by the children. Allegedly, one of the children used the lighter to start a fire in the plaintiff's home sometime after the defendant left the plaintiff's home.

At the time of the fire, the defendant and the defendant's wife (Rebecca) were insured under a homeowner's policy issued by the State Farm Fire & Casualty Company (State Farm). The plaintiff filed a claim against the policy to recover damage to the plaintiff's home caused by the fire. Stephanie McCray was assigned by State Farm to handle the plaintiff's claim. On February 4, 1994, Ms. McCray, in her capacity as a State Farm employee, recorded a statement from Rebecca regarding the plaintiff's claim.

The plaintiff filed four complaints which named only Joseph Exline as a defendant. The original complaint was filed on September 23, 1994. The first three complaints were dismissed for failure to state a cause of action. More specifically, the complaints were dismissed because the plaintiff failed to allege that the defendant knew of specific instances of similar conduct.

On April 13, 1995, the plaintiff filed a third, and currently operative, amended complaint. The third amended complaint contains two counts against the defendant. Count I seeks to impose liability on the defendant on the theory that the fire in plaintiff's home was proximately caused by the defendant's failure to control McKenzie's conduct. Count II seeks to impose liability on the defendant on the theory that the fire was proximately caused by the defendant's negligent entrustment of a cigarette lighter to the two children. The complaint alleges that Rebecca and the defendant knew McKenzie had played with the defendant's cigarette lighter prior to the incident at issue.

On December 15, 1994, the plaintiff served a notice to produce documents on the defendant. The notice requested all statements in defendant's possession from persons having knowledge of the occurrence. Defendant failed to provide Rebecca's statement made to State Farm claims specialist Stephanie McCray on February 4, 1994. Thus, on January 23, 1995, the plaintiff filed a motion to compel the defendant to produce the statement. The defendant filed a memorandum in opposition to plaintiff's motion, which stated that the statement at issue was protected from discovery by the attorney-client privilege. Along with the memorandum, the defendant filed an affidavit executed by Ms. McCray. In the affidavit, Ms. McCray stated that she was a claims specialist employed by State Farm. Ms. McCray also stated that Rebecca and the defendant were co-insureds under a State Farm homeowner's policy on January 17, 1994, and that the plaintiff filed a claim against the policy. Ms. McCray stated that she had been assigned to handle the plaintiff's claim. Ms. McCray also stated that she obtained a statement from Rebecca on February 4, 1994, regarding the plaintiff's claim. Ms. McCray asserted that she obtained the statement in order to investigate plaintiff's claim and prepare a defense to any possible lawsuit which might be filed in connection with the plaintiff's claim against Rebecca and the defendant.

On February 1, 1995, the trial court held a hearing on the plaintiff's motion to compel discovery of Rebecca's statement to Ms. McCray and ruled for the plaintiff. The trial court found that Rebecca's statement given to Ms. McCray was not protected from discovery by the attorney-client privilege because no viable cause of action could be maintained by the plaintiff against Rebecca for damages suffered as a result of the fire. Accordingly, on February 1, 1995, the court ordered the defendant to provide the plaintiff with Rebecca's statement.

On February 14, 1995, the defendant filed a motion to reconsider its granting of the plaintiff's motion to compel discovery of Rebecca's statement. On February 28, 1995, the trial court denied the defendant's motion to reconsider. On March 23, 1995, the trial court certified a question of law for immediate interlocutory appeal pursuant to Supreme Court Rule 308(a). (155 Ill. 2d R. 308(a).) This court granted leave to appeal.

The following question is raised in this appeal:

"Is the recorded statement given on February 4, 1994 by REBECCA EXLINE, an insured under State Farm Fire & Casualty Co. (herein 'State Farm') homeowner's insurance policy #13-B9-0993-5 but not a named defendant in this case, to Stephanie

McCray, an employee of State Farm who was investigating a claim filed under that policy by the plaintiff in this case for property damage incurred to plaintiff's residence as a result of a fire allegedly started by two minor children of REBECCA EXLINE, a privileged communication protected from discovery under the provisions of Illinois Supreme Court Rule 201(b)(2) by the attorney-client privilege?"

We answer affirmatively for the reasons stated below.

As a preliminary matter, we note that the plaintiff has not filed an appellee's brief with this court. Nevertheless, we will proceed to the merits because the record is simple and the claimed error is such that we can decide it without the aid of an appellee's brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133.

Illinois Supreme Court Rule 201(b)(2) (134 Ill. 2d R. 201(b)(2)) governs the protection of attorney-client communications from discovery. The rule provides in relevant part:

"All matters that are privileged against disclosure on the trial, including privileged communications between a party or his agent and the attorney for the party, are privileged against disclosure through any discovery procedure." 134 Ill. 2d R. 201(b)(2).

Generally, "[t]he attorney-client privilege applies to communications made in confidence by a client seeking legal advice of any kind to a professional legal adviser acting in that capacity." (*Regan v. Garfield Ridge Trust & Savings Bank* (1991), 220 Ill. App. 3d 1078, 1090.) However, in some instances the attorney-client privilege attaches to communications made between a client and a nonlawyer. (*People v. Ryan* (1964), 30 Ill. 2d 456, 460; *Lower v. Rucker* (1991), 217 Ill. App. 3d 1, 3.) One such instance is where a communication is made between an insured and an insurer. (*Ryan*, 30 Ill. 2d at 460; *Lower*, 217 Ill. App. 3d at 3.) It is well established in Illinois that, where the insurer is under an obligation to defend the insured, the communication is protected by the attorney-client privilege. (*Ryan*, 30 Ill. 2d at 460; *Lower*, 217 Ill. App. 3d at 3.) In order for an insured to assert the attorney-client privilege, one need only establish: (1) the insured's identity; (2) the insurance carrier's identity; (3) the insurance carrier's duty to defend the insured; and (4) that a communication was made between the insured and an agent of the insurance carrier. *Rapps v. Keldermans* (1993), 257 Ill. App. 3d 205, 212.

After reviewing the record, we determine that the defendant established that the communication at issue was privileged. Ms. McCray's uncontroverted affidavit contains the facts necessary to estab-

lish that the privilege existed. Ms. McCray stated that, at the time the communication was made, she was employed by State Farm, Rebecca was an insured under a State Farm homeowner's policy, that State Farm was obligated to defend Rebecca under the terms of the policy, and that Ms. McCray spoke with Rebecca in order to investigate a claim made upon the homeowner's policy. Accordingly, the defendant established that the communication was privileged at the time the statement was made.

Further, we determine that the communication remained protected at the time the trial court granted the plaintiff's motion to compel and denied the defendant's motion to reconsider. Once privilege attaches to a communication, it is permanently protected unless the privilege is waived. (*Regan*, 220 Ill. App. 3d at 1090.) Further, only the client can effectively waive the attorney-client privilege. (*Chavez v. Watts* (1987), 161 Ill. App. 3d 664, 672.) Because there is nothing in the record to indicate that Rebecca waived the privilege, we determine that the communication remained protected.

In deciding the motion to compel and the motion to reconsider, the trial court reasoned that the communication was not protected from discovery because Rebecca was not a party to the suit, could not have reasonably anticipated being named a party to the suit when she gave the statement, and could not be made a party to the suit in light of the facts of the case. The trial court's reasoning is erroneous. A nonparty insured may assert the attorney-client privilege if the insured made the statement at issue when "the possibility existed that [the insured] would be made a defendant in lawsuits that might arise as a result of the [incident]." (*Lower*, 217 Ill. App. 3d at 3.) In *Lower*, the defendant and Julie were co-owners of an automobile and co-insureds under an automobile liability policy. (*Lower*, 217 Ill. App. 3d at 2.) While the defendant was driving the automobile and Julie was a passenger, the car struck two pedestrians, killing one. (*Lower*, 217 Ill. App. 3d at 2.) After the accident, an independent investigator, hired by Julie and the defendant's insurer, took statements from the defendant and Julie. (*Lower*, 217 Ill. App. 3d at 2.) About four months after the accident, the surviving pedestrian filed suit against the defendant only. (*Lower*, 217 Ill. App. 3d at 2.) The plaintiff's attorney requested the defendant's and Julie's statements made to the independent investigator. (*Lower*, 217 Ill. App. 3d at 2.) The insurer refused to produce the statements, asserting the attorney-client privilege. (*Lower*, 217 Ill. App. 3d at 2.) The trial court held that Julie's statement was not protected by the attorney-client privilege and ordered the insurer to produce it. (*Lower*, 217 Ill. App. 3d at 2-3.) After the insurer failed to produce Julie's statement, the trial court

held the defendant's attorney in contempt for failing to comply with the production order. *Lower*, 217 Ill. App. 3d at 3.

On appeal, this court reversed the trial court's decision and determined that the statement at issue was privileged because "[w]hen [Julie] made her post-accident statement to [the independent investigator], the possibility existed that she would be made a defendant in lawsuits that might arise as a result of the accident, and she could reasonably assume that statements made to her insurer would be transmitted to an attorney for the protection of her own interests." *Lower*, 217 Ill. App. 3d at 3.

The instant case is quite similar to *Lower*. (217 Ill. App. 3d 1.) Rebecca, like Julie, was a co-insured under a liability policy. Further, State Farm, like the insurer in *Lower*, was obligated to defend Rebecca for any suit which might arise from the incident at issue. In addition, State Farm took Rebecca's statement for the purpose of preparing a defense. Finally, when Rebecca gave her statement to Ms. McCray, there was a possibility that Rebecca could have been made a defendant in a lawsuit arising from the incident. Rebecca is McKenzie's and Jeffrey's mother and allegedly knew of McKenzie's propensity for playing with cigarette lighters. Therefore, the fact that the plaintiff subsequently filed a suit only against Rebecca's husband is immaterial as to whether the investigation was a good-faith attempt at the preparation of a defense.

In conclusion, we determine that Rebecca's statement made to Ms. McCray on February 4, 1994, regarding the plaintiff's claim, was a communication protected by the attorney-client privilege and was not subject to discovery. Accordingly, the trial court erred when it granted the plaintiff's motion to compel discovery and denied the defendant's motion to reconsider.

The judgment of the circuit court of Du Page County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

GEIGER and THOMAS, JJ., concur.