*In re* MARRIAGE OF ROCCA SEVERINO, Petitioner-Appellee, and VICTOR SEVERINO, Respondent-Appellant.

Second District   No. 3—97—0728

Opinion filed July 20, 1998.

Vincent L. DiTommaso and Rita A. Farrell, both of DiTommaso & Associates, of Oak Brook, for appellant.

George E. Becker and Thomas J. Rubbone, both of Chicago, for appellee.

JUSTICE HUTCHINSON delivered the opinion of the court:

Respondent, Victor Severino, appeals from a judgment of the trial court dissolving his marriage to petitioner, Rocca Severino. Respondent argues that the trial court erred in determining the awards of maintenance and child support. Specifically, respondent argues that the trial court erred in awarding petitioner maintenance in the amount of $6,500 per month, and in ordering respondent to pay $650 per week in child support for their one minor child. We affirm.

■ Before addressing the merits of respondent's appeal, we note that petitioner failed to file a brief. However, because we find the issues presented relatively straightforward, we may decide this case without an appellee's brief in accordance with *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (holding that a reviewing court should decide the merits of an appeal where the record is simple and the claimed error is such that a decision can be made easily without the aid of an appellee's brief). See also *Exline v. Exline*, 277 Ill. App. 3d 10, 13 (1995).

■ Respondent first argues that the trial court erred by considering respondent's conduct during the marriage in determining the award of permanent maintenance to petitioner. An award of maintenance is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *In re Marriage of Klein*, 231 Ill. App. 3d 901, 905 (1992). The reversal of an award of maintenance is only justified when it is obvious that the trial court acted arbitrarily and without conscientious judgment. *In re Marriage of Schrimpf*, 293 Ill. App. 3d 246 (1997). In determining the award of maintenance, "[m]arital misconduct and morality are not considered." *In re Marriage of Hart*, 194 Ill. App. 3d 839, 851 (1990). When a party claims that the trial court abused its discretion in awarding maintenance, that party bears the burden of showing such abuse. *In re Marriage of Homann*, 276 Ill. App. 3d 236 (1995).

Respondent argues that, when determining whether an award of maintenance was warranted, the trial court considered that he had allegedly physically abused petitioner during the marriage. Petitioner and her therapist had both testified to the long-lasting effects of the

physical abuse on petitioner and how this limited her ability to seek employment opportunities. Respondent asserts that the following language from the trial court's memorandum opinion evinces the improper use of this testimony:

"There was testimony from various sources as to violent and injurious conduct performed upon Mrs. Severino by Mr. Severino and Mrs. Severino and her current therapist related the present manifestations and sequelae of those events. The testimony of each party indicates that each of them came from humble beginnings and that all of their present assets were accumulated during the course of the marriage, that Mrs. Severino helped in the business of Video and Sound at its inception and that Mrs. Severino has not been employed outside the home for many years. Mrs. Severino and her therapist offered evidence of her present frail condition while Mr. Severino and his counsel argue that she is capable of some type of present employment which should lead toward full employment in the near future.

\* \* \*

With regard to the issue of maintenance the court has considered all of the elements set out in 750 ILCS 5/505 and concludes that Mrs. Severino is a compelling candidate for permanent maintenance. The duration of the marriage, age and health condition of the parties, the apparent causal relationship between the present fragile condition of Mrs. Severino and her treatment by her husband during the marriage, the property of the parties, standard of living during the marriage and the individual needs of Mrs. Severino all indicate that she should receive maintenance from Mr. Severino."

■ Upon our review of the record, we determine that respondent has failed to meet his burden of proof. It is true that the trial court listed the abuse suffered by petitioner when listing the factors it considered in awarding maintenance. However, the record reveals that the trial court was very cognizant in making a distinction between punishing respondent for bad behavior and considering the emotional state of petitioner. The trial court reminded the parties during the maintenance hearing that it was not interested in who was a "bad person," but did need information that related to petitioner's ability to support herself. The trial court's finding that petitioner was a candidate for maintenance was based upon the proper factors, including the emotional condition of petitioner. Noting that this "frail" and "fragile" condition of petitioner was apparently caused by the abuse from respondent does not mean that the trial court considered the conduct of respondent in an effort to punish him. The record shows

the opposite intention. Therefore, respondent failed to meet his burden in proving that the trial court abused its discretion.

■ Respondent's second issue on appeal is whether the trial court erred in awarding permanent maintenance in the amount of $8,000 per month, later reduced to $6,500 per month. A court may grant maintenance only when the party seeking maintenance lacks sufficient property to provide for her or his reasonable needs, is unable to support herself or himself through appropriate employment, or otherwise lacks sufficient income. 750 ILCS 5/504(a) (West 1996); *In re Marriage of Flynn*, 232 Ill. App. 3d 394, 400 (1992). The court may grant a temporary or permanent maintenance award as it deems just, after considering the relevant factors, which include:

"(1) the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance;

(2) the needs of each party;

(3) the present and future earning capacity of each party;

(4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having foregone or delayed education, training, employment, or career opportunities due to marriage;

(5) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment or is the custodian of a child making it appropriate that the custodian not seek employment;

(6) the standard of living established during the marriage;

(7) the duration of the marriage;

(8) the age and the physical and emotional condition of both parties;

(9) the tax consequences of the property division upon the respective economic circumstances of the parties;

(10) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the spouse;

(11) any valid agreement of the parties; and

(12) any other factor that the court expressly finds to be just and equitable." 750 ILCS 5/504(a) (West 1996).

We review the grant or denial of maintenance by an abuse of discretion standard. *In re Marriage of Morse*, 240 Ill. App. 3d 296, 307 (1993).

■ Based upon our review of the record, we determine that the trial court did not abuse its discretion. The parties were married for over 25 years. They purchased a million-dollar house in the same year that respondent purchased a Ferrari and reported his income at

$116,000. Respondent is the vice-president and only active shareholder of the company the parties founded in 1974. The trial court found that ample evidence existed that respondent was "less than candid" about his financial activities. One example of his lack of candor is a bank account in respondent's sister's name in which respondent had deposited $400,000. Petitioner does not have a high school education and has not been employed outside of the home for many years. Petitioner's therapist opined that petitioner was suffering from depression and an acute reaction to domestic violence that would make it difficult for her to return to the workplace for several years. The trial court set forth its findings in considerable detail, and we determine that it was not an abuse of the trial court's discretion to award petitioner maintenance in the amount of $6,500 per month.

■ Respondent's third issue is whether the trial court erred in ordering respondent to pay child support in the amount of $650 per week. Generally, section 505(a) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/505(a) (West 1992)) specifies a percentage of a noncustodial parent's income as representing an appropriate child support award. See *In re Marriage of Freesen*, 275 Ill. App. 3d 97, 105 (1995). It is the trial court's responsibility and not the parties' to determine the adequacy and amount of child support. *In re Paternity of Perry*, 260 Ill. App. 3d 374, 380 (1994). The establishment of child support lies within the discretion of the trial court. See *Villanueva v. O'Gara*, 282 Ill. App. 3d 147, 149 (1996), citing *In re Marriage of Bussey*, 108 Ill. 2d 286, 296 (1985). "An abuse of discretion occurs only when no reasonable person would take the view adopted by the trial court." *In re Marriage of Carpel*, 232 Ill. App. 3d 806, 815 (1992), citing *In re Marriage of Partney*, 212 Ill. App. 3d 586, 590 (1991).

■ Respondent argues that the trial court abused its discretion by failing to make a finding as to respondent's net income and for granting a child support award above the statutory guidelines without making any findings to support the award. Neither the memorandum opinion of the trial court nor the judgment of dissolution of marriage contains a finding of respondent's net income. We can use the statutory rates and the child support ordered to calculate the amount that the trial court may have estimated respondent's income to be. See *Carpel*, 232 Ill. App. 3d at 816. Child support of $650 per week represents 20% of a $169,000 annual net income. Respondent asserts that his annual net income, before maintenance and child support, is approximately $66,000.

It would appear that the trial court found respondent's testimony concerning his net income lacked credibility. Joint tax returns from 1986 to 1991 showed the parties' income to range from approximately

$91,000 to $282,000. It is difficult to gauge respondent's actual income presently, but petitioner uncovered certain facts that may reveal discrepancies. Respondent originally reported his income in 1992 to be $167,102. After petitioner discovered a bank account in respondent's sister's name, respondent filed an amended tax return listing his income as $343,259. Respondent had failed to report on either his personal or corporate tax returns a deposit of $176,157 that had been made to the account by the business. Respondent testified that he did not know the source of the money. He was also unable to explain why an unfiled 1992 joint tax return for the parties lists $69,047 in dividend income and his individual and amended individual tax returns for 1992 do not list the dividend income. He was also unable to explain why his reported dividends for 1993 were only $86. Other examples abound in the record to support the trial court's finding that respondent was "less than candid" about his assets and income.

Fortunately, the legislature foresaw situations where the determination of the noncustodial parent's net income could not be accurately determined. In section 505(a)(5), the statute provides:

"If the net income cannot be determined because of default or any other reason, the court shall order support in an amount considered reasonable in the particular case. The final order in all cases shall state the support level in dollar amounts." 750 ILCS 5/505(a)(5) (West 1992).

Without credible evidence of respondent's net income, the trial court was compelled to make the award of child support in an amount that was reasonable in the case. *Cf. In re Marriage of Snow*, 277 Ill. App. 3d 642, 652 (1996) (holding that child support was reasonable even though it was difficult to ascertain the party's net income because of the costs of starting a new business). Respondent had been paying $650 per week in temporary maintenance and child support, and the trial court apparently determined that this amount was reasonable in this case for the award of child support. The record contains abundant evidence relating to the expenses and costs attributed to the minor child of the parties. We do not believe that it was an abuse of the trial court's discretion to find that the sum of $650 per week was necessary to allow the minor child to enjoy the standard of living she would have enjoyed had the marriage not been dissolved. See 750 ILCS 5/505(a)(2)(c) (West 1992).

Under normal circumstances, the trial court is required to make a threshold determination of the party's net income before applying section 505. See *Villanueva*, 282 Ill. App. 3d at 150. If the trial court deviates from the statutory guidelines in awarding child support, either above or below the statutory recommendations, it must make "express

findings as to its reason for doing so." 750 ILCS 5/505(a)(2) (West 1992). In cases where the trial court is unable to determine the net income of the party, it is illogical to assert that the trial court must make express findings for varying the child support award from a percentage recommended by the statute. We believe that section 505(a)(5) merely requires the trial court, in situations where the net income of a party is difficult to determine, to set child support in an amount reasonable in the particular case and express that award of support in a dollar amount. The trial court complied with these requirements. Based upon our review of the record, therefore, we determine that the trial court did not err in setting the award of child support at $650 per week.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

INGLIS and McLAREN, JJ., concur.